IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK C. BOULWARE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner ) <br> Of Social Security, ) <br> ) <br> Defendant. ) | Civil Action No. 13-CV-106-SLR-SRF |

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

Plaintiff Mark C. Boulware ("Boulware" or "Plaintiff") filed this action against Defendant Carolyn W. Colvin, Commissioner of the Social Security Administration (the "Commissioner" or "Defendant")[1] on January 18, 2013. (D.I. 2) Plaintiff seeks judicial review, pursuant to 42 U.S.C. §405(g), of a decision on August 18, 2011, by Administrative Law Judge ("ALJ") Susanne Lewald, denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383(f).

Presently before the court are cross-motions for summary judgment filed by Plaintiff (D.I. 18) and the Commissioner (D.I. 20). Plaintiff asks the court to enter an award of benefits. (D.I. 22 at 2) The Commissioner requests that the decision of the ALJ be affirmed. (D.I. 21 at 2) For the

---

[1] Carolyn W. Colvin became the Commissioner of Social Security on February 13, 2013, after this proceeding was initially filed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin replaced the previous Commissioner, Michael J. Astrue, as the Defendant in this case.

1

reasons set forth below, I recommend that the court DENY Plaintiff's motion for summary judgment and GRANT the Commissioner's cross-motion for summary judgment.

## II. BACKGROUND

### A. Procedural History

On August 27, 2009, Plaintiff filed an application for DIB and SSI, alleging that he has been disabled since August 1, 2008. (D.I. 13 at 38-40) Plaintiff's claims for benefits were denied initially on January 21, 2010 (*Id.* at 42-46), and again on reconsideration on May 25, 2010 (*Id.* at 49-54). On June 28, 2010, Plaintiff filed a written request for a hearing. (*Id.* at 55)

On July 19, 2011, the ALJ held an administrative video hearing. (*Id.* at 17-37) Plaintiff and a vocational expert, Stephen Hughes ("VE"), appeared and testified. (*Id.*) On August 18, 2011, the ALJ issued a decision finding that Plaintiff was not disabled under §1614(a)(3)(A) of the Social Security Act and therefore could perform light work, which included Plaintiff's past positions as a retail manager and sous chef. (*Id.* at 10, 12-15) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-4)

### B. Factual Background

Plaintiff last worked in Nevada at Jimmy's Cheyenne Market ("Jimmy's"), from June to December of 2010. (*Id.* at 33, 34) At Jimmy's, Plaintiff performed a variety of cooking and cleaning jobs, including working as a fry cook and running the hot deli. (*Id.*) A letter from the owner of Jimmy's reports that Plaintiff originally worked 30 hours per week. (*Id.* at 115) At the administrative hearing, Plaintiff testified that his hours were reduced to 16 to 24 hours per week in July or August of 2010. (*Id.* at 32) Plaintiff terminated his employment at Jimmy's in December 2010 due to marital issues unrelated to his claimed disability. (*Id.* at 31-32)

#### 1. Medical History

Plaintiff has three severe impairments: lumbar spine pain, diabetes mellitus with peripheral neuropathy, and an umbilical hernia. (*Id.* at 234-40, 306, 237)

### a. Lumbar Spine Pain

On January 11, 2010, Plaintiff was examined by Karl Fazekas, M.D.,[2] as part of a disability evaluation. (*Id.* at 234-240) Dr. Fazekas administered an x-ray of Plaintiff's cervical spine and the report showed a straightening of the cervical spine, possibly due to muscle spasms, though there were no definite acute compression fractures. (*Id.* at 240) The report also showed that Plaintiff's disc spaces, soft tissues, and posterior elements appeared grossly intact. (*Id.*) Dr. Fazekas' evaluation of Plaintiff indicated a normal gait and full range of motion of Plaintiff's cervical and lumbar spine. (*Id.* at 236-39)

In his functional assessment of Plaintiff, Dr. Fazekas' diagnostic impression was low back pain with full range of motion on exam, myopia and early left cataract with good corrected vision, diabetes mellitus, hypertension, moderate obesity, and an umbilical hernia. (*Id.* at 237). Dr. Fazekas reported that Plaintiff could stand and/or walk for 8 hours in an 8 hour workday and could sit for 8 hours or more in an 8 hour workday. (*Id.* at 238) Dr. Fazekas also noted that if Plaintiff needed time during the day to alternate between sitting and standing, standard breaks and lunches alone would provide sufficient relief. (*Id.*) Dr. Fazekas found that Plaintiff could frequently climb ramps/stairs, balance, stoop/bend, crawl, crouch/squat, and kneel and could occasionally climb ladders/scaffolds. (*Id.*) There were no other limitations noted with regards to reaching, fingering, handling objects, hearing, seeing, speaking, or travelling. (*Id.*)

---

[2] Karl Fazekas, M.D., is a board certified, internal medicine consultative examiner. (D.I. 13 at 234)

3

On May 16, 2010, Karyn Doddy, M.D., a state agency physician, reviewed Plaintiff's medical record and other evidence and affirmed the opinion of Dr. Fazekas that Plaintiff is capable of light work. (*Id.* at 301).

On December 14, 2010, Plaintiff's physician, Elleston Rucker, M.D., reported that Plaintiff was "totally disabled" and that the proposed treatment/limitations would be lifelong. (*Id.* at 302). However, Dr. Rucker also reported a "fair" prognosis and his treatment indicates regular, routine follow up visits with Plaintiff and normal physical examinations of Plaintiff. (*Id.* at 303-318)

### b. Diabetes Mellitus with Peripheral Neuropathy

Since at least 2003, Plaintiff has had non-insulin dependent diabetes mellitus (NIDDM) for which Plaintiff takes oral medications. (*Id.* at 235, 306). Plaintiff may soon require insulin due to poor control over his blood sugar levels. (*Id.*) However, Plaintiff's records show no end-organ damage and no hospitalizations due to his diabetes mellitus. (*Id.* at 303-318) Plaintiff was prescribed medication for diabetic neuropathy, but as of December 14, 2010, Plaintiff's extremities were within normal limits and he has an intact neurological exam without deficit. (*Id.* at 313, *see also id.* at 235)

### c. Umbilical Hernia

During Plaintiff's January 11, 2010 examination, Dr. Fazekas noted a small umbilical hernia. (*Id.* at 237) Due to the umbilical hernia, Dr. Fazekas recommended that Plaintiff lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently. (*Id.*) Dr. Fazekas also recommended that Plaintiff be restricted from moving machinery.[3] (*Id.* at 239)

---

[3] Dr. Fazekas noted that these restrictions could be reassessed after surgical repair of Plaintiff's umbilical hernia. (D.I. 13 at 238)

4

### 2. The Administrative Hearing

#### a. Plaintiff's Testimony

Plaintiff was fifty-two years old at the time of the hearing. (*Id.* at 20) He lives in an apartment with the son of his separated wife. (*Id.* at 21) Plaintiff finished high school and completed one or two semesters of culinary school. (*Id.* at 22)

Plaintiff receives Food Stamp benefits, but has no other source of income. (*Id.* at 40) The Department of Social Services provides him with a medical card that allows Plaintiff to see a doctor. (*Id.* at 29)

Plaintiff worked at Jimmy's as a fry cook and at the hot deli from June through December of 2010. (*Id.* at 31) He was originally scheduled to work 30 hours per week, though he testified that his hours were reduced in July or August to 16 to 24 hours a week due to lack of business.[4] (*Id.* at 31-32) He terminated his employment in December 2010 to travel to Montana for personal marital reasons. (*Id.*) Plaintiff also stated that he is a Jehovah's Witness and goes door-to-door two (2) or three (3) days a week for two (2) to four (4) hours at a time. (*Id.* at 27)

Plaintiff testified that he has constant back pain, numbness and tingling in his fingers and toes, foot pain, and leg swelling if he remains standing for more than five (5) or six (6) hours at a time. (*Id.* at 23-24) The most he can stand at any time is 90 minutes before he has to sit. (*Id.*) Plaintiff explained that the medications prescribed to treat his pain occasionally make him very tired, requiring him to rest. (*Id.* at 25) Plaintiff has not been evaluated by an orthopedic specialist or orthopedic surgeon for his back problems. (*Id.* at 29)

---

[4] Plaintiff indicates that the record was incorrect. Plaintiff alleges that his hours were reduced in September 2010 and in December 2010 he moved to Montana. (D.I. 22 at 2)

5

Plaintiff does limited housework, including making his bed and rinsing and putting away dishes. (*Id.* at 27) However, he spends most of his day "just laying there." (*Id.*) Plaintiff testified that although it would be difficult, he could work again on a full-time basis if necessary. (*Id.* at 32)

### b. Vocational Expert's Testimony

The ALJ posed the following hypothetical to VE Stephen Hughes:

> [A]ssuming an individual of the claimant's age, education, and experience who can sit up to six out of eight [hours a day], stand and walk short distances[s] up to six out of eight [hours a day], lift up to 10 [pounds] frequently and 20 occasionally, no[t] work from heights and [no more than] occasional [] postural [activities]. Can such an individual perform the claimant's past relevant work?

(*Id.* at 34) The VE testified that the individual described would be able to perform the claimant's past relevant work as a retail manager and as a sous chef as it was actually performed by the claimant. (*Id.* at 34-35)

The ALJ posed a second hypothetical and asked whether there is any work available in the full range of sedentary work that is transferrable from Plaintiff's past relevant work. (*Id.* at 35) The VE explained that Plaintiff has skills from his background in management and supervision that are transferrable to a full range of sedentary work, such as a telemarketer, receptionist, and appointment clerk. (*Id.*)

### 3. The ALJ's Findings

The ALJ determined that Plaintiff has not been disabled within the meaning of the Social Security Act from August 1, 2008 through the date of her decision. (*Id.* at 10) The ALJ found, in relevant part:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity August 1, 2008, his alleged onset date (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

6

3. The claimant has the following severe impairments: lumbar spine pain, diabetes mellitus with peripheral neuropathy, and umbilical hernia (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the following limitations: sit up to 6 hours in an 8-hour day; stand and walk short distances up to 6 hours in an 8-hour day; lift 10 pounds frequently and 20 pounds occasionally; no work at heights; and occasional posturals.

6. The claimant is capable of performing past relevant work as a retail manager or sous chef. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on September 19, 1958 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. [C]onsidering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(*Id.* at 9-16)

### III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive if they are supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this

determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See id.* at 1190-91.

Substantial evidence is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the Supreme Court has explained, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id.* at 250-51 (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Brewster v. Heckler*, 786 F.2d 581, 584

(3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). "A district court, after reviewing the decision of the [Commissioner] may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the [Commissioner]'s decision with or without remand to the [Commissioner] for rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act provides insurance benefits "to persons who have contributed to the program and who suffer from a physical or mental disability." 42 U.S.C. § 423(a)(1)(D); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists

in the national economy." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). In order to qualify for disability insurance benefits, a claimant must establish that he was disabled prior to the date he was last insured. 20 C.F.R. § 404.131; *Matullo*, 926 F.2d at 244.

To determine whether a claimant is disabled under the Act, the Commissioner is required to perform a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating a finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. *See* 20 C.F.R. §§

404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that a claimant is not disabled if he is able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to his past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating a finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a VE. *See id.*

### B.     Plaintiff's Arguments on Appeal

#### 1.     Vocational Expert's Findings

Plaintiff disagrees with the ALJ's findings at step four. (D.I. 22 at 1) The ALJ found the Plaintiff capable of performing his past relevant work as a retail manager and sous chef. (D.I. 13 at 9-16). Plaintiff challenges the opinion of the VE as being internally inconsistent. (D.I. 22 at 1)

However, the testimony shows the VE acknowledged a mistake and immediately recanted his original statement that an individual identical to Plaintiff would be unable to perform Plaintiff's

11

past work due to the amount of walking in his past jobs. (D.I. 13 at 34) The VE corrected his error and stated that an individual with limitations identical to Plaintiff would be able to perform Plaintiff's past work as a retail manager and sous chef as they were actually and generally performed. (*Id.* at 34-35)

The Third Circuit "does not require an ALJ to submit to the [VE] every impairment *alleged* by a claimant. Rather, the ALJ is only required to submit credibly established limitations. Where, as here, a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." *Zirnsak v. Colvin*, No. 14-1168, 2014 WL 7799983, at *7 (3d Cir. Dec. 9, 2014) (internal citations omitted). There is substantial evidence to support the ALJ's finding that the Plaintiff can perform his past relevant work and, alternatively, light work. The treatment notes reveal that the Plaintiff's diabetes was managed with medication. (D.I. 13 at 235, 306) Physical examinations demonstrated full range of motion of the cervical and lumbar spines and a normal gait. (*Id.* at 237) The ALJ therefore appropriately exercised her discretion when she determined which limitations to submit to the VE. In the process of reviewing the record for substantial evidence, this court will not substitute its own judgment for that of the fact-finder. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

### 2. The ALJ's Consideration of the Medical Opinions of Dr. Rucker and Dr. Fazekas

Plaintiff contends that the ALJ did not give "appropriate deference" to the medical opinions of Plaintiff's treating sources, particularly Dr. Rucker. (D.I. 22 at 1)

In determining the appropriate weight medical evidence deserves, the ALJ must first assess whether the evidence is from a treating, non-treating, or non-examining source. 20 C.F.R. §§ 404.1502, 416.902. A treating source is a "physician, psychologist, or other acceptable medical

12

source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient. *Id.* A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." *Id.* A medical source is not a treating source if the treatment is based "solely on [the claimant's] need to obtain a report in support of [his or her] claim for disability," and not based on medical need for treatment. *Id.*

A treating source's medical opinion will be given "controlling weight" if the ALJ finds: (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Fargnoli*, 247 F.3d at 43; *Conn v. Astrue*, 852 F. Supp. 2d 517, 525 (D. Del. 2012).

Regardless of the weight given, the ALJ's decision must always provide "good reasons" for a treating source's opinion, *id.*, and an ALJ can only "reject a treating physician's opinion if it is based on 'contradictory medical evidence.'" *Dougherty v. Astrue*, 715 F. Supp. 2d 572, 581 (D. Del. 2010) (citing *Morales*, 225 F.3d at 317). However, "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph will probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Moreover, it is not for this court to reweigh the various medical opinions in the record. *See Monsour Med. Ctr.*, 806 F.2d at 1190. The court's review is limited to determining if there is substantial evidence to support the ALJ's weighing of those opinions. *Id.*

### a. Dr. Rucker's Opinion

On the December 14, 2010 examination of Plaintiff, Dr. Rucker found Plaintiff to be "totally disabled," with the proposed treatment and limitations lasting the remainder of Plaintiff's

13

life. (*Id.* at 302) Dr. Rucker's evaluation appeared on a Social Services "Disability Assessment" form with blanks for the doctor to complete and without any substantial explanation for the doctor's diagnoses or prognosis. (D.I. 13 at 302) The only substantive information included in the form was Plaintiff's diagnosis of degenerative disc disease of the lumbar spine, diabetic neuropathy, hypertension, and a treatment plan of physical therapy and pain medication. (*Id.*)

However, Dr. Rucker's conclusion of total disability contradicted his own records as well as the findings of other physicians who examined Plaintiff. (D.I. 13 at 168, 241, 246, 285, 302, 306, 309, 313) Based on this contradiction, the ALJ properly assigned little weight to Dr. Rucker's conclusion because "[t]he opinion is not consistent with the overall evidence of the record, including Dr. Rucker's own treatment notes, the claimant's activities of daily living, and the consultative examiner's report."[5] (D.I. 13 at 13)

### b. Dr. Fazekas' Opinion

Plaintiff contends Dr. Fazekas' findings are erroneous because they are inconsistent with the limited activities Plaintiff believes he can perform.[6] (D.I. 22 at 1) Plaintiff argues that he is unable to work as a result of limited ability to stand and walk due to back pain, joint pain, and leg swelling. (*Id.*) Plaintiff insists leg swelling would occur within four (4) hours of standing and joint

---

[5] The ALJ is not required to re-contact a physician about ambiguous medical evidence where the entire record is adequate to determine whether the claimant is disabled. *See, e.g., Kelly*, 2013 WL 5273814, at *15 (explaining that the ALJ need not re-contact the medical source simply "because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records" (citations omitted)); *Simmons v. Barnhart*, 2004 WL 2323776, at *6 (D. Del. Oct. 12, 2004) (same), *aff'd*, 148 F. App'x 134 (3d Cir. 2005). *See also* 20 C.F.R. 404.1520b(b) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have."); 20 C.F.R. 404.1520b ("We consider evidence to be inconsistent when it . . . is ambiguous . . . .").

[6] Plaintiff argues that the findings of Dr. Fazekas are "not consistent with what [he] was able to perform." (D.I. 22 at 1) The court assumes that the Plaintiff is in agreement with Dr. Rucker's opinion of complete disability and is arguing that Dr. Fazekas' opinions should not have been given greater weight.

14

pain would occur within 90 minutes of standing and/or walking. (*Id.*) Plaintiff admits that the medication prescribed did control his pain. (*Id.*) However, four (4) hours after taking the medication, his movements would slow down considerably making it difficult to work an eight (8) hour shift. (*Id.*) Plaintiff also maintains that increased activity would aggravate his pain and require even more pain medication. (*Id.*)

Plaintiff argues that he had taken pain medication before being examined by Dr. Fazekas, which may account for the normal examination findings including greater movement in his joints than Plaintiff would normally have without medication. (*Id.*) By arguing that Dr. Fazekas' findings are inconsistent with what Plaintiff is able to perform, Plaintiff is essentially contending that the ALJ's RFC assessment is erroneous because it does not include "established limitations" that result from Plaintiff's severe impairments. (D.I. 22 at 1)

However, Plaintiff's argument fails because the ALJ's RFC assessment accounts for all of Plaintiff's limitations that were credibly established by the evidence of record.[7] The ALJ found that Dr. Fazekas' opinions deserved greater weight as his opinions were more consistent with the medical record as a whole. (*See id.* at 303-318) Therefore, substantial evidence exists to support the ALJ's findings based upon the medical opinions. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

### 3. Testimony Regarding Plaintiff's Activity as a Door-to-Door Jehovah's Witness

---

[7] This court has rejected similar arguments in previous cases. In *Kelly v. Colvin*, 2013 WL 5273814 (D. Del. Sept. 18, 2013), the court explained, "'[i]n determining a claimant's RFC, the ALJ is only required to include limitations credibly established by the evidence, not every limitation alleged.'" *Id.* (alteration in original) (quoting *Scandone v. Astrue*, 2011 WL 3652476, at *11-12 (E.D. Pa. 2011)).In *Scandone*, the court held that a claimant's severe impairment does not necessarily entitle her to an RFC assessment accounting for that impairment if the ALJ concludes that no functional limitations stem from that impairment. *Scandone*, 2011 WL 3652476, at *12.

15

Plaintiff contends that the ALJ misinterpreted his testimony regarding his activities as a door-to-door Jehovah's Witness. (D.I. 22 at 2) As a Jehovah's Witness, Plaintiff is obligated to go door-to-door as part of his preaching and teaching activities. (D.I. 13 at 27) As a result of his physical limitations, Plaintiff cut down this activity to two (2) to four (4) hours a day, two (2) to three (3) days a week. (D.I. 22 at 2) Plaintiff believes the ALJ overestimated his physical activities as a Jehovah's Witness as proof that Plaintiff is not disabled. (*Id.*) Plaintiff's activities of daily living were considered by the ALJ within the entirety of the record. Based upon consideration of the record as a whole, the ALJ determined the Plaintiff has the residual functional capacity to perform light work. Contrary to Plaintiff's assertion, the ALJ's decision did not hinge on this one single activity of the Plaintiff.

### 4. Objections Regarding Inconsistencies in the Record

Plaintiff argues the ALJ improperly relied on inconsistencies in the transcript of the administrative hearing. (D.I. 22 at 1-2). Plaintiff believes the ALJ gave inappropriate weight to Plaintiff's statement that, if he had to, he could return to work on a full time basis.[8] (D.I. 13 at 32) However, the ALJ's decision does not refer to Plaintiff's statement. (D.I. 13 at 9-15)

Plaintiff insists the record is incorrect in regards to his employment at Jimmy's. (D.I. 22 at 2). Plaintiff states that he worked 30 hours per week from June 2010 to December 2010 and that his hours were cut back in September 2010, rather than in July or August as he testified to during the administrative hearing. (*Id.*) However, this inconsistency was not determinative of the ALJ's finding of "not disabled." The ALJ only discussed this portion of Plaintiff's employment history when referencing that Plaintiff's hours were reduced due to a general lack of work and that Plaintiff

---

[8] When the ALJ asked if Plaintiff could "do the work on a full-time basis," Plaintiff responded: "Could I? I could do the work, again... It would be difficult but if necessary and I had to do it, yeah, that's life." (D.I. 13 at 32)

terminated his employment at Jimmy's due to personal issues unrelated to his claimed disability. (D.I. 13 at 13-14) Therefore, Plaintiff has failed to support his assertion that the ALJ relied on inconsistencies in the transcript to reach a decision on the Plaintiff's RFC.

### 5. Finding of Transferability of Plaintiff's Job Skills

Plaintiff contends that it is "virtually impossibl[e]" for him to obtain either of the jobs cited by the vocational expert due to his age, physical disabilities, and possible legal liability.[9] (D.I. 22 at 2)

Having found the Plaintiff was capable of performing two of his past relevant jobs, the ALJ proceeded to consider whether the Plaintiff has skills that would transfer to other work that exists in significant numbers in the national economy.

The award of benefits is based in part upon the existence of jobs in the local and national market which Plaintiff is able to perform considering his RFC, education, and work experience. *See* C.F.R. §§ 404.1563(a) and 416.963(a). Age is also considered along with severe impairments for a person closely approaching advanced age (age 50-54). *See* C.F.R. §§ 404.1563(d) and 416.963(d). In those circumstances, limited work experience may affect a claimant's ability to adjust to other work. *See id.*

Here, Plaintiff has extensive work experience in a number of related fields. (D.I. 13 at 130-34) The VE considered Plaintiff's age, RFC, education, and past work experience when determining whether there is work available that Plaintiff is capable of performing in the national and local economy. (*Id.* at 15, 34-36) The VE made the assessment that there were 300,000 jobs nationally and 3000 locally in Nevada as a telemarketer and 40,000 jobs nationally and 400 locally in Nevada as an appointment clerk. (*Id.* at 35-36) Both of these jobs are considered semi-skilled

---

[9] Plaintiff believes that an employer would face legal liability due to Plaintiff's need to take prescription pain medication in order to perform tasks. (D.I. 22 at 2)

17

sedentary positions that Plaintiff would be capable of performing considering his limitations. (D.I. 13 at 15, 34-36) Again, considering the record as a whole in support of the VE's opinion as to other jobs within the Plaintiff's limitations, substantial evidence exists for the ALJ's determination that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

## V.  CONCLUSION

For the foregoing reasons, I recommend that the court DENY Plaintiff's motion for summary judgment and GRANT the Commissioner's cross-motion for summary judgment.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 10, 2015

Sherry R. Fallon
United States Magistrate Judge